**AMENDED OPINION\***

*This opinion is subject to revision before
publication in the Pacific Reporter*

**2014 UT 14**

IN THE

SUPREME COURT OF THE STATE OF UTAH

DOUGLAS C. DILLON and MOLLY R. DILLON,
*Plaintiffs and Appellees,*

*v.*

SOUTHERN MANAGEMENT CORPORATION RETIREMENT TRUST, *et al.,*
*Defendants and Appellants.*

No. 20120145
Filed May 13, 2014

Third District, Silver Summit
The Honorable Keith A. Kelly
No. 080500830

Attorneys:

Bruce A. Maak, Robyn L. Wicks, Salt Lake City, for appellees
Eric P. Lee, Kathleen E. McDonald, Salt Lake City, for appellants

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of
the Court, in which JUSTICE PARRISH, JUSTICE LEE,
JUDGE VOROS, and JUDGE HANSEN joined.

Having recused themselves, CHIEF JUSTICE DURRANT and
JUSTICE DURHAM do not participate herein;
COURT OF APPEALS JUDGE J. FREDERIC VOROS, JR. and
DISTRICT JUDGE ROYAL I. HANSEN sat.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

**INTRODUCTION**

¶ 1 Southern Management Corporation Retirement Trust
(SMCRT) seeks review of the district court's grant of summary

---

\* The court has added ¶ 61 and altered ¶ 62 to address
appellees' request for attorney fees on appeal.

judgment in favor of Douglas C. and Molly R. Dillon. The district court determined that the trust deed encumbering the Dillons' property in Park City was invalid, that SMCRT had slandered the Dillons' title, and that SMCRT was therefore liable for damages under (a) section 57-1-38(3) of the Utah Code and (b) the trust deed itself. The district court determined that the Dillons were entitled to recover their attorney fees and that a portion of those fees should be trebled pursuant to section 57-1-38 of the Utah Code. SMCRT argues that each of these conclusions was erroneous. We affirm the district court's grant of summary judgment and the majority of its award of damages, but reverse its grant of treble attorney fees under Utah Code section 57-1-38(3).

## BACKGROUND

¶ 2 SMCRT owns approximately twenty-five thousand properties, including apartments, office buildings, resort properties, and garages. SMCRT also funds loans secured by real estate. In 2005 and 2006, SMCRT agreed to use Robert Rood and his companies, Level One Capital Partners, LLC (Level One) and Blue Horseshoe Portfolio Services (Blue Horseshoe), to originate loans that would be funded by SMCRT. Under the agreement, Level One and Blue Horseshoe would find borrowers, prepare loan documents, and choose a title company to close the transactions. SMCRT funded approximately thirty-two loans through Mr. Rood and his companies.

¶ 3 In June 2006, Level One originated a $500,000 loan to Thomas Gramuglia (loan or note). To secure the loan, Mr. Gramuglia signed a trust deed (trust deed) for properties he owned in New York (New York Property) and Park City (Park City Property), under which Level One was named the beneficiary. Later in June 2006, Level One assigned the trust deed and note to SMCRT, but SMCRT did not record the assignment of the trust deed until August 2008.

¶ 4 Initially, Mr. Gramuglia made loan payments to Level One, and Level One in turn made monthly interest payments to SMCRT. But despite the fact that he was making payments directly to Level One, Mr. Gramuglia soon discovered that SMCRT was involved with the loan. On August 1, 2006, SMCRT sent Mr. Gramuglia a letter stating that the "servicing of the [loan] had been transferred to [SMCRT], effective with the August 1,

2006 loan payment." In December 2006, SMCRT sent Mr. Gramuglia a similar letter. Upon Mr. Gramuglia's inquiry, SMCRT informed him to disregard the notices and continue making loan payments directly to Level One. A similar situation arose again in July 2007 when SMCRT informed Mr. Gramuglia that his loan, which "originated . . . with Level One . . . and [was] purchased by [SMCRT]," had matured and was immediately due and payable in full to SMCRT. Mr. Gramuglia's attorney sent a reply letter to SMCRT explaining that Mr. Gramuglia had extended the maturity date of the loan by exercising his option with Level One over three months prior. The letter invited questions from SMCRT. SMCRT did not respond.

¶ 5 Shortly thereafter, Mr. Gramuglia and Mr. Rood, who was acting on behalf of Level One, discussed the possibility of Mr. Gramuglia selling the Park City Property and using the proceeds to pay down the balance of his loan. Mr. Gramuglia proposed that in return for the partial prepayment, SMCRT would agree to release the Park City Property from the trust deed, and the remaining balance of the loan would then be secured solely by the New York Property.

¶ 6 On August 15, 2007, Mr. Rood met with SMCRT's investment committee to discuss the modification of Mr. Gramuglia's loan and corresponding release of the Park City Property. What happened in the meeting is a central source of dispute between the Dillons and SMCRT. Three of the four investment committee members could not recall what transpired in that meeting. One member remembered that they had discussed Mr. Gramuglia paying down part of the loan. The handwritten notes of Michael McKinley, an investment committee member, are the only significant written evidence of what happened in the meeting. His notes read, in pertinent part:

> Will pay down $250,000 on Park City UT    9/15
> Refi pending for NY Property
> Escrowed thru 10/1
> Will extend until 12/31/07
> @ 250,000 Rood will prepare modification

¶ 7 Based on this evidence, the Dillons contend that during the meeting SMCRT "agreed in return for $250,000 payment from the sale of the [Park City Property] to release the [Park City Property]." In contrast, SMCRT's position is that Mr. Rood was

there to ask for authority to modify the loan and that permission was granted only if three conditions were met: (1) SMCRT's receipt of a $20,000 loan extension fee, (2) SMCRT's receipt of $250,000, and (3) the preparation and execution of "a loan extension and modification agreement."

¶ 8   After Mr. Rood's meeting with SMCRT's investment committee, Mr. Gramuglia listed the Park City Property and sold it to the Dillons in September 2007. First American Title Insurance Company (FATCO) handled the closing of the sale. FATCO requested that Level One, as the record owner of the trust deed, issue a written payoff letter listing the amount necessary to pay off the note and release the trust deed on the Park City Property. Level One provided the payoff letter to FATCO, dated August 29, 2007, and in it stated that the payoff amount was $250,000. FATCO disbursed $250,000 to Level One on September 7, 2007. On the same date, Mr. Gramuglia delivered a warranty deed to the Dillons and they recorded it.[1]  At the time of the purchase, neither FATCO nor the Dillons knew that the beneficial interest under the trust deed had been assigned to SMCRT because SMCRT had not recorded the assignment.

¶ 9   Sometime after the Dillon closing in late 2007, SMCRT initiated an investigation into Mr. Rood and Level One. Based on that investigation, SMCRT concluded that Mr. Rood and his entities had misappropriated money belonging to SMCRT.

¶ 10   On May 9, 2008, SMCRT filed a lawsuit in Montgomery County, Maryland, against Mr. Rood and his entities seeking to recover the allegedly misappropriated funds, including the $250,000 paid by the Dillons at the Park City Property closing

---

[1] The parties dispute whether SMCRT received any of the $250,000 that was disbursed by FATCO to Level One. The Dillons contend that SMCRT did receive the $250,000 through its agent, Mr. Rood, because SMCRT approved the payoff amount at the August 15 meeting and Level One collected that amount in its capacity as SMCRT's loan manager and servicer. SMCRT, however, claims that Level One did not transfer any of the $250,000 to SMCRT and that in any event Level One and Mr. Rood were not acting as authorized agents when they orchestrated and then received the payoff money.

(Rood Action). In the Rood Action, SMCRT asserted that "SMCRT entered into a business relationship with Rood" whereby, "acting in his individual capacity and/or through [his companies] and pursuant to the agreements between the parties, Rood would originate, process, underwrite, close and fund these private loans." SMCRT also stated that Mr. Rood and his companies would "service the loan for [SMCRT] during the life of each loan," and that SMCRT did not have "any direct contact with the borrowers either when the original loan was made or during the term of the loans."

¶ 11 On July 15, 2008, David Hillman, one of SMCRT's trustees, sent an email in which he explained to the recipient that "on September 7, 2007 a closing occurred on the sale of Gramuglia's property in Utah to what appears to be innocent 3rd parties." Nevertheless, sometime that same summer, SMCRT retained Park City attorney Dwayne Vance to initiate a nonjudicial foreclosure of the Park City Property pursuant to the Gramuglia trust deed. SMCRT also directed Mr. Vance to open a dialogue with FATCO, with the hope of avoiding the foreclosure process and resolving the matter informally. Mr. Vance made several efforts to discuss resolution with both FATCO and the Dillons, but he did not receive any response.

¶ 12 On November 17, 2008, Mr. Vance prepared a "Notice of Trustee's Sale" for the Park City Property, setting December 17, 2008, as the sale date. On December 5, the Dillons filed a complaint against SMCRT. The complaint sought a restraining order to enjoin SMCRT's foreclosure sale. On December 12, the district court granted the Dillons a temporary restraining order.

¶ 13 On January 15, 2009, SMCRT filed a "Motion to Stay Proceedings," pointing out that Mr. Rood had initiated bankruptcy proceedings in Maryland. In support of its motion, it argued that the results of the bankruptcy case would materially advance the resolution of the Dillons' claims. The district court denied this motion. The Dillons filed a second amended complaint on April 30, 2009.

¶ 14 SMCRT then filed a motion to dismiss portions of the Dillons' second amended complaint. The district court granted portions of the motion and denied others. The Dillons' surviving causes of action included (1) a request for a declaratory judgment that (a) the trust deed had been discharged by Mr. Rood and

(b) the trust deed should have been released and reconveyed under the Utah Recording Act, (2) a request for damages under Utah Code section 57-1-38, stemming from SMCRT's failure to release the trust deed, (3) a request for recovery of attorney fees under the terms of the trust deed, and (4) slander of title.

¶ 15 In December 2009, SMCRT executed and recorded a reconveyance of the trust deed as part of a settlement in another case it had filed in Maryland against Mr. Gramuglia (Gramuglia Action). In the Gramuglia Action, SMCRT sought to recover $500,000, plus interest and attorney fees, on the loan. During trial, the parties settled. As part of the settlement, on December 11, 2009, SMCRT executed and recorded with the Summit County Recorder a reconveyance of the trust deed and Mr. Gramuglia paid SMCRT $300,000.

¶ 16 In April 2010, the Dillons brought a motion for partial summary judgment, and in October, SMCRT filed its own motion for partial summary judgment.[2] After hearing argument on the motions, on April 7, 2011, the district court granted summary judgment in favor of the Dillons. The court concluded that SMCRT was liable to the Dillons on the four surviving claims. The district court held (1) that the Utah Recording Act "rendered

---

[2] In September 2010, before the court had ruled on their motion for summary judgment, the Dillons filed a "Motion to Apply Collateral Estoppel with Respect to the Summary Judgment Issues." This motion was based on the fact that at some time earlier, SMCRT had filed suit against FATCO in Maryland concerning the same issues (FATCO Action). In August 2010, the Maryland court determined that Mr. Rood and his company, Level One, were "authorized" by SMCRT to "quote and receive the payoff of the Gramuglia Trust Deed in the Dillon transaction." The Dillons sought to apply collateral estoppel on this basis. The district court agreed with the Dillons and in issuing its ruling on summary judgment, simultaneously granted the Dillons' motion to apply collateral estoppel, using it as an "independent ground" under which Mr. Rood and his company, Level One, could be seen to have acted with authorization from SMCRT. However, because we determine that Mr. Rood was acting as an authorized agent under a ratification theory, we need not address the collateral estoppel claim. *See infra* Part I.

the off-record interest of Southern Management in the Gramuglia Trust Deed void as against the Dillons," (2) that Mr. Rood and Level One were authorized to act on behalf of SMCRT "in quoting and receiving the payoff with respect to the Dillon closing in return for a reconveyance of the Gramuglia Trust Deed," (3) SMCRT was liable for slander of title, and (4) SMCRT wrongfully refused to reconvey the Gramuglia trust deed and thus breached both the terms of the deed itself as well as Utah's Trust Deed Act. The court did not enter final judgment at that time, but instead scheduled a one-day evidentiary hearing to determine damages.

¶ 17 On July 12, 2011, the court heard evidence on the Dillons' damages. Because of the nature of the dispute, the Dillons' damages were almost entirely in the form of attorney fees. On October 14, 2011, the district court awarded the Dillons attorney fees and costs totaling $1,603,182.07.[3] Of particular importance to our holding, pursuant to Utah Code section 57-1-38(3) the court trebled the Dillons' "Resisting Foreclosure" and "Quiet Title" damages amounts, which included and indeed were largely comprised of attorney fees.

¶ 18 SMCRT filed a rule 60(b) motion for relief from judgment on October 7, 2011, which the district court denied. This motion was based on a bankruptcy action in Maryland, in which SMCRT and the bankruptcy trustee sued Mr. Rood for fraud and conspiracy with respect to the thirty-two loans that Mr. Rood made on behalf of SMCRT, including the Gramuglia

---

[3] The court arrived at this figure by adding the Utah Code section 57-1-38 damages with "Nonoverlapping Section 78B-5-826 damages." Section 57-1-38 damages were awarded in several categories. "Resisting Foreclosure damages" totaled $24,446.20 and accounted for the damages resulting from SMCRT's wrongful effort to foreclose. This included attorney fees and expenses incurred to fight the foreclosure action. "Quiet Title damages" totaled $458,956.91 and were the result of SMCRT's continued refusal to reconvey the trust deed. This number included attorney fees and expenses incurred to establish that the trust deed was not a valid encumbrance. The court awarded the Dillons damages on the basis of their successful slander of title claim as well as in a number of other categories.

loan. After a trial, the Maryland bankruptcy court found that Mr. Rood had "released, without consideration," the Park City Property "from the [trust deed]" and that SMCRT had no notice of the release. The court also found that Mr. Rood "sent a fraudulent payoff letter to [FATCO] that resulted in the title company wiring $250,000" to one of Mr. Rood's companies. SMCRT argued that, under the doctrine of comity, the district court should revise its summary judgment ruling on the basis that the bankruptcy court had determined that Mr. Rood's actions were fraudulent. The court held that SMCRT showed "no legal or procedural error or irregularity . . . as would justify the application of Rule 60(b)(6)." Moreover, the court found that the doctrine of comity "does not apply here" and even if it did, the bankruptcy court's "suggestion that Rood perpetrated a fraud upon [SMCRT] and misappropriated its money would have no effect upon the Summary Judgment Order."

¶ 19   After entering its October 14, 2011 findings of fact and conclusions of law on damages, the district court "became concerned that it had not performed a sufficiently rigorous analysis of the application of [Utah Code section] 57-1-38(3) in awarding damages, and in particular, in determining what amounts of attorney fees and costs should be trebled . . . ." The court asked for supplemental briefing on the issue. It ultimately determined that it had improperly trebled a portion of the Dillons' damages—namely, those incurred after SMCRT reconveyed the trust deed on December 11, 2009. On that basis, the court reduced the total award of fees and costs to $1,120,395.69, and on January 23, 2012, it issued "Amended Findings of Fact and Conclusions of Law Concerning Damages," and a separate "Final Judgment."

¶ 20   SMCRT timely appealed, and the Dillons cross-appealed. We have jurisdiction over this matter pursuant to section 78A-3-102(3)(j) of the Utah Code.

**STANDARD OF REVIEW**

¶ 21 "We review the district court's grant of summary judgment for correctness" and "accord no deference to [its] conclusions of law."[4]   Rather, we review de novo whether the

---

[4] *Torian v. Craig*, 2012 UT 63, ¶ 13, 289 P.3d 479.

record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5] Moreover, "we may affirm the result reached by the trial court if it is sustainable on any legal ground or theory apparent on the record, even though that ground or theory was not identified by the lower court as the basis of its ruling."[6]

## ANALYSIS

¶ 22 This case began when the Dillons sought to stop SMCRT's foreclosure action and to quiet title in the Park City Property. However, since SMCRT reconveyed the property following a settlement in the Gramuglia Action in December 2009, the focus of the case has become recovery of the attorney fees and costs incurred by the parties.

¶ 23 SMCRT argues that the court erred when it granted the Dillons summary judgment on the basis of a principal-agent relationship between Mr. Rood/Level One and SMCRT. SMCRT takes issue with both of the district court's alternate grounds for concluding that Mr. Rood was authorized to "quote and receive the Dillon payoff and agree to the reconveyance of the Gramuglia Trust Deed." SMCRT challenges the district court's finding that Mr. Rood either had actual authority or SMCRT ratified that authority, or alternatively, that SMCRT was estopped from denying the agency relationship under the doctrine of collateral estoppel (stemming from the Gramuglia Action). SMCRT also argues that under the doctrine of comity, the district court should have adopted the conclusion of the Maryland bankruptcy court, which found that Mr. Rood was not acting as SMCRT's agent because he was actively defrauding SMCRT. We hold that SMCRT ratified Mr. Rood's actions in the Dillon transaction and thus we do not address the collateral estoppel or comity arguments.

¶ 24 SMCRT also argues that the district court erred when it granted summary judgment to the Dillons and awarded them damages, some of which were trebled under Utah Code section 57-1-38(3). SMCRT argues that summary judgment on the

---

[5] UTAH R. CIV. P. 56(c).

[6] *Smith v. Frandsen*, 2004 UT 55, ¶ 6, 94 P.3d 919 (internal quotation marks omitted).

Dillons' slander of title claim was improper because (1) the trust deed was a valid encumbrance under which SMCRT, as beneficiary, could lawfully foreclose and (2) the district court erred in granting summary judgment where "malice," a required element of slander of title, was a disputed fact. We conclude that the district court made an error of law with respect to slander of title and thus we clarify the law and affirm on alternate grounds.

¶ 25  SMCRT argues, generally, that the district court erred in granting summary judgment on behalf of the Dillons and thus damages were inappropriate. They also argue that attorney fees were improperly trebled under Utah Code section 57-1-38(3). The Dillons cross-appealed on this issue and argue that they should have received treble attorney fees for the entire action, not just for the period prior to SMCRT's reconveyance. Finally, SMCRT argues that the Dillons are not entitled to attorney fees because they did not incur any attorney fees—FATCO was liable for the fees under the title insurance policy. We hold that the court improperly trebled attorney fees under Utah Code section 57-1-38(3) and remand for a recalculation of damages. We affirm the award of all other damages.

## I.  SMCRT RATIFIED THE ACTIONS OF MR. ROOD AND LEVEL ONE

¶ 26 SMCRT argues that the district court erred when it concluded that Mr. Rood and Level One were acting as SMCRT's agents. Specifically, SMCRT argues that there were not sufficient facts to find either actual or implied authority in this case. The Dillons maintain that there was a principal-agent relationship between SMCRT, Mr. Rood, and Level One. The Dillons contend that even in the absence of actual or apparent authority, SMCRT nevertheless ratified Mr. Rood's actions when it sued him to recover the $250,000 the Dillons paid for the purchase of the Park City Property.[7]  We agree.

_____

[7] The Dillons make two other agency arguments. They claim that by failing to record its assignment, SMCRT consciously allowed Level One to remain the owner of record of the Park City Property, which gave Level One apparent authority to deal with prospective purchasers like the Dillons. They also argue that Mr. Rood and Level One had apparent authority to complete the transaction because SMCRT expressly stated to Mr. Gramuglia

¶ 27 SMCRT responds by arguing that (1) for ratification to occur, there must have been an agency relationship at the time of the relevant conduct, (2) the Dillons presented no evidence that SMCRT intended to ratify Mr. Rood's conduct, and (3) SMCRT's lawsuit against Mr. Rood and his companies is not proof of ratification.

¶ 28 It is a well-settled principle of agency law that "[a] principal may impliedly or expressly ratify an agreement made by an unauthorized agent."[8] "[R]atification requires the principal to have knowledge of all material facts and an intent to ratify."[9] "A deliberate and valid ratification with full knowledge of all the material facts is binding and cannot afterward be revoked or recalled,"[10] particularly in cases where the principal has received and retained the benefit of the ratification.[11]

¶ 29 SMCRT argues that an actual agency relationship is a prerequisite to application of the doctrine of ratification. This is untrue. "Ratification of an agent's acts relates back to the time the unauthorized act occurred and is sufficient to create the relationship of principal and agent."[12] Thus, a threshold agency determination is not required.[13]

---

that he should be dealing directly with Level One and that that manifestation of authority would have passed from Mr. Gramuglia to the Dillons. Because we agree that SMCRT ratified Mr. Rood's actions by suing him to recover the $250,000, we need not address the Dillons' other agency arguments.

[8] *Bradshaw v. McBride*, 649 P.2d 74, 78 (Utah 1982).

[9] *Id.*

[10] *Id.*

[11] *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1099 (Utah 1988) (citing RESTATEMENT (SECOND) OF AGENCY §§ 98–99 (1958)).

[12] *Id.* at 1098 (quoting *Bradshaw*, 649 P.2d at 78). *See also Jones v. Mut. Creamery Co.*, 17 P.2d 256, 259 (Utah 1932).

[13] *See Zeese v. Estate of Siegel*, 534 P.2d 85, 89 (Utah 1975) ("[A]lthough the act may have [been] done without any precedent authority, ratification creates the relation of principal and agent."). Moreover, even if an actual agency relationship were required,

¶ 30 For ratification to occur, the principal must have knowledge of all "material facts and circumstances relative to the unauthorized act or transaction."[14] "Ratification of an act about which the principal knows nothing is inherently impossible."[15] Thus, an essential fact that is implicit to a finding of ratification is the principal's knowledge that an individual has acted purportedly on behalf of the principal or as the principal's agent. SMCRT does not dispute that at the time it filed the Rood Action it was aware of the actions Mr. Rood took purportedly on its behalf during the sale of the Park City Property.

¶ 31 SMCRT also argues that there is no evidence that it intended to ratify Mr. Rood's actions. However, "[a] principal may impliedly or expressly ratify an agreement made by an unauthorized agent."[16] Ratification, "like original authority need not be express. Any conduct which indicates assent by the purported principal to become a party to the transaction or which is justifiable only if there is ratification is sufficient."[17]

¶ 32 In its action against Mr. Rood, SMCRT was attempting to recover the $250,000 Level One received as a result of selling the Park City Property to the Dillons. But the only way SMCRT could

---

SMCRT would still lose. The parties agree that SMCRT received twelve monthly interest payments on the Gramuglia loan between August 2006 and July 2007 from funds held in escrow by Mr. Rood's company, Level One. This fact alone establishes that there was an agency relationship between Mr. Rood and SMCRT. SMCRT has presented no evidence to suggest that it terminated this agency relationship prior to the sale of the Park City Property in September 2007.

[14] *Jones*, 17 P.2d at 259.

[15] *Zions First Nat'l Bank*, 762 P.2d at 1098 (internal quotation marks omitted). *See also* RESTATEMENT (THIRD) OF AGENCY: RATIFICATION § 4, intro. note (2006) (explaining that "[a] person may ratify the act of an actor who was not an agent at the time of acting when the actor purported or assumed to act as the person's agent").

[16] *Bradshaw*, 649 P.2d at 78.

[17] *Moses v. Archie McFarland & Son*, 230 P.2d 571, 573–74 (Utah 1951) (emphasis omitted).

legitimately recover those funds was if it acknowledged Mr. Rood's authority with respect to the sale of the Park City Property. As the Dillons point out, "[t]he Trust cannot consistently claim that it was entitled to receive the Dillons' $250,000 payment *from [Mr.] Rood*, but that [Mr.] Rood was completely unauthorized to enter into the transaction through which that payment was received." SMCRT's position that Mr. Rood was unauthorized to sell the property to the Dillons conflicts with SMCRT's attempt to recover the $250,000. By suing Mr. Rood to recover those funds, SMCRT ratified the transaction, and that ratification "relates back to the time the . . . act occurred."[18] In other words, through ratification, regardless of the agency status at the time of the transaction, it is as though Mr. Rood was acting as an authorized agent of SMCRT the entire time.[19] Moreover, to hold otherwise would allow SMCRT to take contrary positions in independent legal proceedings and reap the benefit of those contrary positions with the potential of obtaining a double recovery.[20]

---

[18] *Zions First Nat'l Bank*, 762 P.2d at 1098 (quoting *Bradshaw*, 649 P.2d at 78).

[19] RESTATEMENT (THIRD) OF AGENCY: RATIFICATION § 4, intro. note (2006) ("By ratifying an act, a principal triggers the legal consequences that would follow had the act been that of an agent acting with actual authority.").

[20] This is also consistent with the well-established principle that a "defrauded party, after learning the truth will not be permitted to go on deriving benefits from the transaction and later elect to rescind." *Frailey v. McGarry*, 211 P.2d 840, 845 (Utah 1949). A contract that is allegedly entered through fraud or misrepresentation is "voidable, and it is entirely within the right of the injured party to affirm it or treat it as valid . . . [T]he party is entitled to a reasonable time in which to decide upon the course he will take. But this does not mean that he will be indulged in a vacillating or hesitating course of conduct, but that he must . . . avoid such a delay as will make the ensuing rescission injurious to . . . the intervening interests of third persons." *Id.* (internal quotation marks omitted); *see also Ockey v. Lehmer*, 2008 UT 37, ¶ 32, 189 P.3d 51 ("The purpose of doctrines like ratification and

¶ 33 In short, even if we accept the unlikely proposition that Mr. Rood and Level One had no authority to act on behalf of SMCRT at the time of the sale of the Park City Property, SMCRT's lawsuit against Mr. Rood and his entities constituted a ratification of those actions. We therefore affirm the district court's conclusion that Mr. Rood was acting as SMCRT's agent during the Dillon transaction. Having found that Mr. Rood was SMCRT's agent through ratification, we need not address the other agency arguments.

## II. SUMMARY JUDGMENT WAS APPROPRIATE ON THE SLANDER OF TITLE CLAIM

¶ 34 The Dillons claim that SMCRT slandered their title because it published false information disparaging the Dillons' title when it (1) improperly filed foreclosure documents against the Dillons' property, (2) communicated false information about the state of the Dillons' title to the Dillons' lender, and (3) directed the title company not to reconvey the Gramuglia trust deed. SMCRT argues first that the Dillons' title was in fact invalid and thus SMCRT could not have committed slander of title. Alternatively, they argue that slander of title requires actual knowledge that the information published is false, and thus the question of whether SMCRT had such knowledge is a disputed fact inappropriate for summary judgment. We agree that slander of title requires actual knowledge, but hold that the undisputed facts nevertheless show that SMCRT committed slander of title as a matter of law. We thus affirm the district court on alternate grounds.[21]

¶ 35 The district court correctly concluded that all of the elements of slander of title were established by the undisputed facts. However, the district court misstated the malice standard when it reasoned that SMCRT "acted with malice under Utah law because they *knew or should have known* that the Gramuglia trust deed did not constitute an enforceable encumbrance against the

---

apparent authority is to avoid instances where a technicality can be used to evade a contract . . . .").

[21] *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record . . . ." (internal quotation marks omitted)).

Dillon Property."[22] We now clarify that to show malice in a claim for slander of title, the plaintiff must prove that the defendant had actual knowledge that the statements at issue were false.

¶ 36 Utah has adopted a four-step analysis in evaluating slander of title claims:

> To prove slander of title, a claimant must prove that (1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) *the statement was made with malice*, and (4) the statement caused actual or special damages.[23]

We have previously held that "the filing of an instrument in good faith, though mistaken, is not actionable as slander of title."[24] Thus, for a slanderous statement to be malicious, the defendant must have actually known that it was false or misleading.[25] Yet, although the defendant must know that the statement is false, it need not be "affirmatively shown that the wrong was done with an intent to injure, vex or annoy, or because of hatred, spite or ill will."[26] Instead, malice "may be implied where a party knowingly and wrongfully . . . publishes something untrue or spurious . . . under circumstances that it should reasonably foresee might result in damage to the owner of the property."[27]

¶ 37 In seeking to foreclose on the Park City Property and in various other communications, SMCRT represented that the loan

---

[22] (Emphasis added).

[23] *First Sec. Bank of Utah, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1256–57 (Utah 1989) (emphasis added).

[24] *Howarth v. Ostergaard*, 515 P.2d 442, 444 n.1 (Utah 1973).

[25] *Dowse v. Doris Trust Co.*, 208 P.2d 956, 958 (Utah 1949) ("At the time [Defendant] filed the instrument he knew that he had no rights or interest in the property . . . under such a state of facts his filing was malicious."); *Howarth*, 515 P.2d at 444 & n.1; *First Sec. Bank of Utah*, 780 P.2d at 1257.

[26] *Howarth*, 515 P.2d at 444; *see also First Sec. Bank of Utah*, 780 P.2d at 1257.

[27] *First Sec. Bank of Utah*, 780 P.2d at 1257.

still encumbered the property and was in default.[28] These statements were both disparaging and false. Because SMCRT ratified his actions,[29] Mr. Rood was acting as an authorized agent when he sold the property to the Dillons and accepted their payment to discharge the trust deed. Therefore, the Gramuglia loan was not enforceable as an encumbrance against the Park City Property.[30] Since (1) the statements were false and (2) SMCRT published that false information, the next question is whether SMCRT acted with malice.

¶ 38 The undisputed facts show that SMCRT knew that the information disparaging the Dillons' title was false and SMCRT should reasonably have foreseen, under the circumstances, that publishing that information "might result" in damage to the Dillons.[31] This constitutes implied malice.

¶ 39 As discussed, SMCRT filed a lawsuit against Mr. Rood, which had the effect of ratifying his actions with respect to the sale of the property to the Dillons.[32] This lawsuit also demonstrates that SMCRT had actual knowledge that the loan had been released from the property. When SMCRT disparaged the Dillons' title, it is undisputed that it had already initiated legal proceedings against Mr. Rood and Level One to recover the Dillons' $250,000 payment, a payment that the Dillons made to release the loan and take clear title to the property. It is also undisputed that SMCRT filed the Rood Action to obtain, among other things, the Dillons' payment. Therefore, SMCRT had actual knowledge that the loan had been discharged because they asserted in the Rood Action that they knew of and accepted the consequences of the discharge of the loan. Yet, despite this

---

[28] These statements were made between August and November 2008, with the filing of the "Notice of Default" on August 15, 2008.

[29] *See supra* Part I.

[30] SMCRT filed suit against Mr. Rood to recover the payoff amount in May 2008 and attempted to foreclose on the Park City Property in November 2008.

[31] *First Sec. Bank of Utah*, 780 P.2d at 1257.

[32] *Supra* ¶¶ 32–33.

knowledge, and despite privately acknowledging that the Dillons were "innocent 3rd parties," SMCRT still sought to foreclose on the Park City Property.

¶ 40  As a result, the Dillons suffered damages, including, among other things, legal fees they incurred to defend the foreclosure action.  Accordingly, all of the elements of slander of title were satisfied by the undisputed facts.  We thus clarify and affirm the district court's grant of summary judgment on slander of title and hold that the Dillons are entitled to damages.

### III.  THE DISTRICT COURT PROPERLY AWARDED DAMAGES TO THE DILLONS BUT ERRED WHEN IT TREBLED ATTORNEY FEES

¶ 41  The final issues raised by SMCRT in this appeal concern the district court's award of attorney fees and costs to the Dillons. SMCRT argues that the award was erroneous for a number of reasons.  First, it argues that the trust deed was valid and thus the district court erred by awarding the Dillons fees for their Recording Act claim[33] and their Trust Deed Act claim.[34]  Second, it argues that the district court erred when it trebled a portion of the Dillons' damages award and improperly included attorney fees.[35]  Third, SMCRT claims that the Dillons did not deserve an attorney fees-based damages award because they have not paid any fees—FATCO has, and FATCO cannot make a claim for fees because subrogation does not apply.  Finally, SMCRT argues that the Dillons failed to properly apportion their claims.

¶ 42 The Dillons cross-appealed, challenging the district court's refusal to treble their attorney fees for the amounts incurred after SMCRT reconveyed the property in December 2009. The Dillons argue that they are entitled to trebled fees for the entirety of this lawsuit, including the fees incurred after SMCRT recorded the reconveyance.  We disagree and hold that none of the Dillons' attorney fees should have been trebled.

¶ 43  We affirm the district court's decision generally to award fees under the Trust Deed Act (Utah Code section

---

[33] UTAH CODE § 78B-5-826.

[34] *See* UTAH CODE § 57-1-38(3).

[35] *See id.*

57-1-38(3)) and the trust deed itself. But we reverse the district court's decision to treble the Dillons' attorney fees under Utah Code section 57-1-38(3)(a). Aside from the trebling of attorney fees, we affirm the district court's damages award. Accordingly, we remand this case to the district court for recalculation of the improperly trebled damages.

### A. The Dillons Are Generally Entitled to Attorney Fees and Costs

¶ 44 We agree with the district court's conclusion that the Dillons are entitled to fees and costs for (1) their claim under section 57-1-38(3) of the Trust Deed Act and (2) their claim under Utah Code section 78B-5-826 based on the attorney fee provision of the trust deed itself.

1. The Dillons Are Entitled to Fees Under the Trust Deed Act, Utah Code Section 57-1-38

¶ 45 Under Utah Code section 57-1-38(3),

> A secured lender or servicer who fails to release the security interest on a secured loan within 90 days after receipt of the final payment of the loan is liable to another secured lender on the real property or the owner or titleholder of the real property for:
>
> (a) the greater of $1,000 or treble actual damages incurred because of the failure to release the security interest, including all expenses incurred in completing a quiet title action; and
>
> (b) reasonable attorneys' fees and court costs.

SMCRT argues that section 57-1-38(3) does not apply for a variety of reasons. It argues that SMCRT never received payment, that Mr. Rood lacked authority to modify the loan, that the payment was not "final" within the meaning of section 57-1-38(3), and that the statute of frauds required the modification and release to be in writing.[36] We disagree and affirm the district court's holding

---

[36] SMCRT's latter two arguments have been raised for the first time on appeal and are thus unpreserved. SMCRT has not provided any argument that an exception to the preservation rule should apply and thus we will not address these claims. *Patterson v. Patterson*, 2011 UT 68, ¶¶ 12–16, 266 P.3d 828 ("The policy of

that the Dillons are generally entitled to damages and attorney fees under Utah Code section 57-1-38(3).

¶ 46  Because SMCRT ratified Mr. Rood's actions,[37] Mr. Rood received the $250,000 final payoff as an agent of SMCRT. This amount was a "final payment" under section 57-1-38(3) because the trust deed beneficiary—SMCRT—via its agent, Mr. Rood, "agree[d] for a sum certain to release a portion of the real property pledged on the trust deed."[38]  Mr. Rood and the Dillons agreed that for $250,000, the Gramuglia trust deed would no longer encumber the Park City Property.  Even after SMCRT received final payment via Mr. Rood, it maintained that it had a security interest in the Park City Property and directed the title company not to reconvey the property.  In other words, SMCRT received the Dillons' payoff in September 2007 but did not release the trust deed and reconvey the Park City Property until December 2009.  We are not persuaded by any of SMCRT's defenses to liability under section 57-1-38(3).  Therefore, we affirm the district court's conclusion that the Dillons are entitled to costs and fees under the Trust Deed Act, Utah Code section 57-1-38(3).

2. The Dillons Are Entitled to Fees Under the Terms of the Trust Deed Itself

¶ 47  The district court properly awarded damages to the Dillons based on Utah Code section 78B-5-826, which states:

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.

---

judicial economy is most directly frustrated when an appellant asserts unpreserved claims that require factual predicates.").

[37] *Supra* ¶¶ 26–33.

[38] UTAH CODE § 57-1-40.5(1)(a) (allowing partial reconveyance of a trust deed, which is secured by more than one parcel of real property when a beneficiary agrees to a sum certain for partial release and such amount is paid).

SMCRT presented two positions on the district court's award of attorney fees under section 78B-5-826. On the one hand, SMCRT argues that the district court improperly awarded section 78B-5-826 attorney fees to the Dillons based on their Recording Act claim because that claim was based on the statute, not the trust deed. But SMCRT agrees that section 78B-5-826 gave the district court discretion to award attorney fees to the prevailing party because the action was in part "based upon" a "promissory note, written contract, or other writing."[39]

¶ 48  We recently clarified what it means for an action to be "based upon" a contract for the purposes of Utah Code section 78B-5-826. "[A]n action is 'based upon' a contract under the statute if a party to the litigation assert[s] the writing's enforceability as a basis for recovery."[40] There is no doubt that SMCRT is asserting the enforceability of the trust deed in this case. Nor is there any dispute that the trust deed allows for its holder to be reimbursed for attorney fees incurred in any litigation "which may arise in respect" to the trust deed. SMCRT was the holder of the trust deed by virtue of its beneficial assignment from Level One. Therefore, had SMCRT been the prevailing party in this action, it would have been entitled to attorney fees under the trust deed. Accordingly, the district court did not abuse its discretion in awarding the Dillons attorney fees under Utah Code section 78B-5-826, as prevailing parties in this litigation. We therefore affirm.

### B. *The District Court Erred When It Trebled the Dillons' Attorney Fees*

¶ 49  In the end, the district court awarded the Dillons $1,120,395.69 for attorney fees and costs. Part of the reason that the award was so large is that the district court construed section 57-1-38(3) of the Utah Code to allow for the trebling of attorney fees. The Dillons argue that this decision was proper because the statute provides for the recovery of "treble actual damages incurred because of the failure to release the security interest, including all expenses incurred in completing a quiet title

---

[39] UTAH CODE § 78B-5-826.

[40] *Insight Assets, Inc. v. Farias*, 2013 UT 47, ¶ 24, __ P.3d __ (alterations in original) (internal quotation marks omitted).

action,"[41] which they believe includes attorney fees. SMCRT, on the other hand, argues that because the statute contains a separate clause discussing attorney fees and court costs, the district court erred by including attorney fees within the trebled award. We agree with SMCRT and remand for the district court to recalculate damages.

¶ 50   Section 57-1-38(3) of the Utah Code provides:

A secured lender or servicer who fails to release the security interest on a secured loan within 90 days after receipt of the final payment of the loan is liable to another secured lender on the real property or the owner or titleholder of the real property for:

(a) the greater of $1,000 or treble actual damages incurred because of the failure to release the security interest, including all expenses incurred in completing a quiet title action; and

(b) reasonable attorneys' fees and court costs.

The question of whether the "actual damages incurred" referred to in subsection (3)(a) includes attorney fees is a matter of statutory interpretation. When interpreting a statute, we look to the plain language first, "recognizing that our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve."[42]   When completing textual analysis, we "avoid interpretations that will render portions of a statute superfluous or inoperative."[43]  We also "seek to render all parts thereof relevant and meaningful."[44]   Thus, the plain language of specific provisions should be read harmoniously with that statute's other provisions.[45]  If we have reviewed the statute's

---

[41] UTAH CODE § 57-1-38(3)(a).

[42] *In re Reinhart*, 2012 UT 82, ¶ 17, 291 P.3d 228 (internal quotation marks omitted).

[43] *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958.

[44] *Id.* (internal quotation marks omitted).

[45] *Lyon v. Burton*, 2000 UT 19, ¶ 17, 5 P.3d 616.

structure and plain language and the provision is ambiguous, only then will we look to legislative history for guidance.[46]

¶ 51   Under these basic principles of statutory interpretation, we conclude that subsection 3(a)'s reference to "all expenses" does not include attorney fees.  Although the Dillons' interpretation is plausible, it is foreclosed by the legislature's inclusion of subsection 3(b) because if 3(a) were to include attorney fees, 3(b) would be rendered superfluous.   Contrary to the Dillons' argument, the legislature's inclusion of subsection 3(b) indicates the legislature's intent to carve out attorney fees from the "expenses" that can be trebled under 3(a).   That is, had the legislature intended for attorney fees to fall under the purview of subsection 3(a), it would not have included 3(b) at all.  But since it did include subsection 3(b), 3(a)'s reference to "all expenses" cannot be read to include attorney fees.

¶ 52 The Dillons argue that if attorney fees are not recoverable under subsection 3(a), "then the expenses to be trebled will be essentially zero because there are no other material expenses in a quiet title action."  But this argument is based upon a misreading of the statute, which provides for the recovery of "damages incurred because of the failure to release the security interest," of which "all expenses incurred in completing a quiet title action"[47] are but a part.  Such damages could include, for example, lost profits if a seller is unable to perform under a real estate purchase contract because her lender refuses to timely release the lien.   Thus, we are not persuaded by the Dillons' argument that "the expenses to be trebled will be essentially zero" if attorney fees are not recoverable under Utah Code section 57-1-38(3)(a).

¶ 53 The Dillons also try to distinguish between subsection 3(a) and 3(b) by arguing that 3(a)'s reference to "damages" can include attorney fees without rendering 3(b) superfluous because 3(b) is only concerned with attorney fees incurred in *recovering* the damages referred to in 3(a).  In other words, the Dillons argue that section 57-1-38(3) allows for the recovery of attorney fees under subsection 3(b) that were incurred while attempting to recover

---

[46] *Id.*

[47] UTAH CODE § 57-1-38(3)(a).

damages under 3(a), which were comprised of attorney fees. This argument is unavailing, since either subsection 3(a) or 3(b) would still be superfluous. Had the legislature meant to allow triple attorney fees, it would not have expressly provided for the recovery of those fees in a separate provision.

¶ 54 For these reasons, we conclude that attorney fees are not recoverable and thus cannot be trebled under subsection 3(a). Accordingly, we hold that the district court erred when it trebled attorney fees along with all of the Dillons' other damages. We remand to allow the district court to recalculate that portion of the damage award consistent with this opinion.

### C. The Dillons Are Entitled to an Award of Attorney Fees for Fees Paid by FATCO

¶ 55 SMCRT argues that the Dillons are not entitled to attorney fees in this action because FATCO has paid all of the attorney fees and has neither subrogated its claim nor is a party to this action. SMCRT couches its argument in terms of subrogation, and argues that FATCO failed to satisfy the fourth element required for subrogation: that the entire debt be paid. The Dillons argue that subrogation is irrelevant and frame the issue as simply whether fees are recoverable by an insured even if a nonparty insurer paid those fees—an issue of first impression in Utah. FATCO was contractually obligated under the trust deed to defend the Dillons against SMCRT's foreclosure.

¶ 56 While we have not specifically determined whether an insured can recover attorney fees paid for by a nonparty (insurer or otherwise), we have never required a party recovering fees to provide proof that they have paid or will pay the attorney fees incurred. Rather, our inquiry has always been limited to whether the overall attorney fees awarded to a party are reasonable.[48] And for good reason. Failure to award attorney fees to a prevailing party, for the sole reason that there is insurance coverage or a generous benefactor, would give the nonprevailing party "an undeserved windfall. . . . [And] [w]hy should a nonprevailing [party] be afforded any fortuitous benefit from such

---

[48] *See Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶ 51, 308 P.3d 424; *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶¶ 47–48, 1 P.3d 1095.

circumstances?"[49]  Put another way, "[w]hen a party's insurer is providing [legal aid] and coverage, the party and the insurer are, to the limits of the coverage, one party [act]ing under the name of the insured.  The benefits flowing from a party's insurance coverage flow in favor of the insured party, not the adverse party."[50]  Additionally, to hold otherwise would require district courts to delve into the financial arrangements between attorneys and clients, far beyond the scope of the litigation—a task we refuse to impose on district courts.  Accordingly, FATCO's fulfillment of its contractual obligation by paying the attorney fees in defending the Dillons' title is not a barrier to recovery of those fees.  We now turn to SMCRT's challenge of the reasonableness of the attorney fees award.

### D.  The District Court Otherwise Properly Calculated the Fee Award

¶ 57  SMCRT presents two challenges to the district court's method of calculating the fee award—that the Dillons failed to properly allocate their fees among successful claims, unsuccessful claims, and claims for which there is no entitlement to attorney fees; and that the award was unreasonable because the district court included work performed that was not "reasonably necessary to adequately prosecute the matter."[51]

¶ 58  SMCRT's first challenge is based on the sufficiency of the evidence.[52]  As the Dillons correctly point out, the district court made extensive findings of fact with regard to the allocation of fees, and SMCRT failed to marshal the evidence to challenge the sufficiency of the evidence supporting these findings, as required by Utah Rule of Appellate Procedure 24(a)(9).  Because SMCRT failed to marshal, we are not persuaded that there was an inadequate evidentiary basis for the attorney fees award.

---

[49] *Aspen v. Bayless*, 564 So.2d 1081, 1083 (Fla. 1990) (internal quotation marks omitted).

[50] *Ferrer v. Ngo*, 73 P.3d 73, 80 (Haw. Ct. App. 2003).

[51] *Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988).

[52] SMCRT argues "[g]iven the inadequate evidentiary basis for an award under the circumstances, the court abused its discretion in failing to deny fees altogether."

¶ 59  "An appellant cannot demonstrate that the evidence supporting a factual finding falls short without giving a candid account of that evidence."[53]  "Formal briefing requirements aside, an argument that does not fully acknowledge the evidence supporting a finding of fact has little chance, as a matter of logic, of demonstrating that the finding lacked adequate factual support."[54]  Because SMCRT has failed to carry its burden to demonstrate that the evidence supporting the district court's findings is insufficient, we reject this claim on appeal.

¶ 60  SMCRT also challenges the award of attorney fees for the time period after it reconveyed the trust deed in December 2009.  SMCRT argues that the relief the Dillons sought was clear title, which they received as a result of the reconveyance; therefore, fees thereafter were not "reasonably necessary to adequately prosecute" the Dillons' claim for clear title.  SMCRT's argument is unavailing.  While SMCRT may have reconveyed the trust deed prior to judgment in this case, it continued to argue the enforceability of the trust deed even on appeal.  Given these facts, the district court did not abuse its discretion when it included attorney fees incurred after the reconveyance.

### E. The Dillons' Fees on Appeal

¶ 61  As a final matter, we address the Dillons' claim that they are entitled to an award of attorney fees incurred on appeal.  We have "interpreted attorney fee statutes broadly so as to award attorney fees on appeal where a statute initially authorizes them."[55]  Additionally, when a party is entitled to attorney fees below and prevails on appeal, that party is "also entitled to fees reasonably incurred on appeal."[56]  Therefore we hold that the Dillons are entitled to receive the attorney fees that they reasonably incurred on appeal.

---

[53] *State v. Mitchell*, 2013 UT App 289, ¶ 31, 318 P.3d 238.

[54] *Id.* (internal quotation marks omitted).

[55] *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998).

[56] *Id.*; *see also R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 27, 40 P.3d 1119.

**CONCLUSION**

¶ 62   We hold that SMCRT ratified Mr. Rood's actions and so affirm the district court's grant of summary judgment on all related claims.   We also affirm the district court's grant of summary judgment in favor of the Dillons on slander of title but clarify that slander of title requires actual knowledge of falsity. Finally, we hold that the district court correctly determined that the Dillons were en titled to recover damages, including attorney fees and costs, under section 57-1-38(3) of the Utah Code and under the trust deed itself. The district court erred, however, when it concluded that Utah Code section 57-1-38(3) permits the trebling of attorney fees.   Accordingly, we remand this case to the district court so that the fee award can be recalculated in a manner consistent with this opinion.  We also instruct the district court to calculate and award the Dillons the attorney fees that they have reasonably incurred on appeal.