Ronald BRADSHAW and Barbara Bradshaw, his wife, Plaintiffs and Respondents,

v.

Josephine P. McBRIDE, Meryl P. Lessing, Itha P. Robinson; Roman O. Funk, Donna Marie P. Boyce, Hilda Joan P. Hickman, John Parkinson Lister, Administrator of the Estate of Annabelle P. Lister, and Foch Parkinson, Defendants and Appellants.

No. 17429.

Supreme Court of Utah.

June 28, 1982.

---

**3.** *State v. John*, Utah, 586 P.2d 410 (1978).

**4.** *Id.*

**5.** 22 Utah 2d 343, 453 P.2d 146 (1969).

**6.** See *State v. Clark*, Utah, 632 P.2d 841 (1981).

Paul N. Cotro-Manes, Salt Lake City, for defendants and appellants.

Philip C. Pugsley, Watkiss & Campbell, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice:

Defendants appeal from a lower court ruling ordering specific performance of an oral contract to sell plaintiffs two parcels of land and appurtenant water rights. Defendants seek reversal of the order on four grounds: lack of jurisdiction over one of the eight co-owners of the property; insufficiency of the evidence to show that the co-owner entering into the oral contract acted as an agent for the remaining co-owners; insufficient "part performance" of the oral contract to satisfy the statute of frauds; and an absence of evidence showing which water rights were appurtenant to the land being sold.

Aretta J. Parkinson originally owned the property in dispute (hereinafter the Parkinson farm). Prior to her December 23, 1976 death, she deeded a one-eighth undivided interest in the farm to each of her eight children as tenants in common. The deed was not recorded until January 14, 1977. Aretta Parkinson's children are the defendants in this action. Annabelle Lister, one of Aretta Parkinson's daughters, died shortly after her mother's death. John Parkinson Lister, Annabelle Lister's son, was named administrator of her estate and is a named defendant in this suit.

The Parkinson farm consists of four tracts containing 200 acres. Three adjoining tracts constitute 160 acres; one 40-acre tract is a short distance away. For several years the Bradshaws cared for and used the 40-acre tract with the Parkinson's permission. The Bradshaw property completely surrounds the 40-acre tract and borders the 160-acre tract on several sides.

On January 15, 1977, Roma Funk, one of Aretta's daughters, visited Barbara Bradshaw to ascertain her interest in purchasing the Parkinson farm. They talked about the farm generally and the separate 40-acre tract specifically. Both knew of an appraisal of all Aretta Parkinson's property and agreed to a selling price of $33,000, the approximate appraised value of the 200 acre farm.[1] Bradshaw gave Funk a check for $5,000, with $28,000 payable in cash as soon as a clear title to the property was conveyed.

The testimony of Funk and Bradshaw conflicts as to whether Funk brought with her to the meeting the appraisal and the warranty deed by which Aretta Parkinson conveyed the Parkinson farm to her children. Bradshaw testified that she thumbed through the documents Funk gave her, including the appraisal and the warranty deed. Funk testified that she did not bring these papers, and that neither she nor Bradshaw knew the number of acres included in the farm or the exact lands they were talking about. Funk also stated that the sale was contingent on the approval of her family and that she had no authority to act for them in negotiations or sales. Bradshaw claimed that she asked Funk several times during the meeting whether the Parkinson children gave her authority to act for them and that Funk answered affirmatively.

It is undisputed that there was no written real estate contract. However, the trial court found that the parties had entered into an oral contract of sale. The essential facts are that after the meeting Funk contacted her sisters, notified them of the agreement to sell the farm and advised them of the $5,000 check she had received from Bradshaw. She later contacted Bryant Hansen, a real estate broker, to help her complete the details of the transaction. Hansen prepared an earnest money agreement which the Bradshaws signed and returned to him. The provisions of the unex-

1. The actual appraised value amounts to $33,-560.

ecuted earnest money agreement corresponded to Barbara Bradshaw's version of what transpired at the initial meeting. Funk had provided Hansen with a copy of the appraisal which he used for the legal descriptions in the earnest money agreement. Mrs. Funk had not seen the earnest money agreement before her deposition and none of the defendants signed it. Hansen, the real estate agent, also prepared warranty deeds which were signed by three of Aretta's children and returned to him,[2] but not delivered to the Bradshaws. Several defendants later refused to convey their interests in the Parkinson farm despite the Bradshaws' willingness to pay an additional $2,000 to clear a title problem on the property.

Subsequent to the oral agreement between the Bradshaws and Roma Funk, the Bradshaws claim they took possession of the 160-acre parcel by grazing cattle and repairing fences. They also installed a pipeline. The pipeline was a twelve-inch plastic pipe laid in the ground. The Johnny Smith Irrigation Company hired Mr. Bradshaw to install the pipe. Bradshaw testified that the pipeline took the place of a ditch in the field and allowed farming of square sections of land rather than having to cope with odd angles. He also stated that the pipeline eliminated seepage and substantial recharge to the ground waters supplying his wells and that if he were not the owner of the property, he would not have installed the pipeline. Foch Parkinson testified that the pipeline detrimentally deprived the subject land of water and that the disruptions to the land caused by the pipe installation had not been corrected. Funk authorized Bradshaw to retain occupancy of the 40-acre tract he had previously worked and to install the pipeline. Bradshaw's work on the pipeline was billed to Funk and paid in part by the federal government. According to Bradshaw, if Funk had not paid the bill to the irrigation company, Bradshaw would have been held liable for it.

2. The warranty deed and receipt agreement were signed and returned to Mr. Hansen by

Also of some significance is the relationship of the parties to two different water and irrigation companies. Mammoth Ditch Company imposed an assessment for the cleaning of ditches if the landowner did not perform this duty. The Johnny Smith Irrigation Company assessed all its members according to their shares of stock for the installation of the pipeline. Although Bradshaw continued to clean the ditches on the 40 acres he already occupied, he did not pay any of the monetary assessments against the Parkinson farm property.

Contrary to the Bradshaws' position, Foch Parkinson claimed that he farmed seven or eight acres of hay on the 160-acre tract subsequent to the initial agreement and that he had never seen cattle grazed on the property. He also stated that no fence repair had occurred other than that which he had done.

Also in support of the claim for specific performance, Mr. Bradshaw testified that, in reliance on the oral contract, he passed up opportunities to purchase other land and failed to file suit for claims he had against the Parkinson estate.

■ Defendants first argue that the claim against Annabelle Lister's estate was not filed within the statute of limitations period established by the probate code. Utah Code Ann., 1953, § 75-3-803(2)(a) and § 75-3-802. The "claims" covered under these statutes and their predecessors do not include claims for specific performance. *In re Estate of Sharp*, Utah, 537 P.2d 1034 (1975). "The term 'claim' ... does not include a claim for specific performance, but refers to debts or demands against the decedent which might have been enforced in his lifetime, by personal actions for the recovery of money ...." *Id.* at 1037. Therefore, because this is an action only for specific performance, the statute of limitations in the probate code is not applicable against John Lister, the administrator of Annabelle Lister's estate.

Roma Funk, Donna Boyce, and Itha P. Robinson.

Defendants next contend that Funk was not authorized to act as agent for the other defendants. The general rule is that one who deals with an agent has the responsibility to ascertain the agent's authority despite the agent's representations. *Dohrmann Hotel Supply Co. v. Beau Brummel, Inc.*, 99 Utah 188, 103 P.2d 650 (1940). The Bradshaws in effect concede this point, but argue that the defendants subsequently ratified the oral contract. The trial court found ratification in the defendants' failure to come forward and repudiate or disaffirm Mrs. Funk's agreement to sell the property or her authority to act for them.

A principal may impliedly or expressly ratify an agreement made by an unauthorized agent. Ratification of an agent's acts relates back to the time the unauthorized act occurred and is sufficient to create the relationship of principal and agent. *Zeese v. Estate of Siegel*, Utah, 534 P.2d 85 (1975); *Moses v. Archie McFarland & Son*, 119 Utah 602, 230 P.2d 571 (1951). A deliberate and valid ratification with full knowledge of all the material facts is binding and cannot afterward be revoked or recalled. *Stark v. Starr*, 94 U.S. 477, 24 L.Ed. 276 (1876). However, a ratification requires the principal to have knowledge of all material facts and an intent to ratify. *Jones v. Mutual Creamery Co.*, 81 Utah 223, 17 P.2d 256 (1932). Under some circumstances failure to disaffirm may constitute ratification of the agent's acts. In quoting 1 Williston on Contracts 805 (Rev.ed.), this Court stated in *Moses v. Archie McFarland & Son*, 119 Utah at 607, 230 P.2d at 573–574:

> Ratification like original authority need not be express. Any conduct which indicates assent by the purported principal to become a party to the transaction or which is justifiable only if there is ratification is sufficient. Even silence with full knowledge of the facts may manifest affirmance and thus operate as a ratification. The person with whom the agent dealt will so obviously be deceived by assuming the professed agent was authorized to act as such, that the principal is under a duty to undeceive him.... So a purported principal may not be wilfully ignorant, nor may he purposely shut his eyes to means of information within his possession and control and thereby escape ratification 'if the circumstances are such that he could reasonably have been expected to dissent unless he were willing to be a party to the transaction.' ...

The trial court found that the defendants other than Funk had ratified the Funk-Bradshaw agreement, in part, by their knowledge and acceptance of the agreement. This finding, however, is clearly not supported by the evidence in the record as to two defendants who were not notified of the agreement until receipt of the warranty deeds prepared by Hansen. Funk testified that she did not contact her brother Foch or John Lister, the administrator of Annabelle Lister's estate. At trial, Foch testified that when he first learned of the agreement he was opposed to it, but was willing to go along with the agreement only if the court found it enforceable. Foch attempted to determine the validity of the contract by meeting with his attorney and Ron Bradshaw in his attorney's office. He continually stated his objection to the agreement, and his actions cannot be interpreted as ratification. John Lister testified that he did not become aware of the agreement until he received the real estate documents from Hansen. Lister did not sign the documents and did nothing to ratify the agreement between Funk and Bradshaw. When presented with a writing to convey ownership in property, Lister had no duty to disavow any putative agreement. On the contrary, his failure to sign is evidence of rejection. It is clear that neither Foch nor Lister in fact ratified the agreement.

Furthermore, as to all defendants, there was no ratification as a matter of law because the Utah statute of frauds requires that any agent executing an agreement conveying an interest in land on behalf of his principal must be authorized in writing.

Utah Code Ann., 1953, § 25–5–3.[3] In order to enforce an oral agreement, the same kind of authorization that is required to clothe an agent initially with authority to contract must be given by the principal to constitute a ratification of an unauthorized act. Where the law requires the authority to be given in writing, the ratification must also generally be in writing. *Ceizyk v. Goar Service & Supply, Inc.*, 21 Ariz.App. 119, 516 P.2d 61 (1973); *Bruns v. Huseman*, 266 Ill. 212, 107 N.E. 462 (1914); *Stammelman v. Interstate Co.*, 112 N.J.L. 342, 170 A. 595 (1934); *Llewellyn v. Sunnyside Coal Co.*, 242 Pa. 517, 89 A. 575 (1914); *Dunbar v. Farnum*, 109 Vt. 313, 196 A. 237 (1938). There was, therefore, no ratification in this case.

 Furthermore, the Bradshaws' part performance of the oral contract was not sufficient to take the case outside the statute of frauds. See Utah Code Ann., 1953, § 25–5–3. To meet the part performance exception to the statute of frauds, § 25–5–8, the terms of the oral contract must be clear and definite and established by clear and definite testimony. *Holmgren Brothers, Inc. v. Ballard*, Utah, 534 P.2d 611 (1975). In addition, part performance requires that (1) any improvements made on the property must be substantial and valuable; (2) valuable consideration must be given; (3) possession must be actual and open; and (4) the acts of part performance must be exclusively referable to the contract. *Id.* at 614.

Numerous cases illustrate these principles, a few of which will suffice. In *Holmgren Brothers, supra*, plaintiff, relying on an oral contract for the sale of land, delivered $18,500 to a bank at defendant's request, and defendant promised to deliver marketable title to plaintiff. Plaintiff took possession of the property and improved it by weeding, discing, and planting wheat. The court found that the payment was made to someone other than the vendor and was conditioned on delivery of clear title and the plaintiff always had the power to defeat payment. The court held that plaintiff did not establish exclusive possession of the property by visiting it only twice. The improvements were not substantial, beneficial, or valuable enough that compensation could not be made for them. The Court held the evidence of part performance insufficient.

*Ravarino v. Price*, 123 Utah 559,.260 P.2d 570 (1953), reversed the trial court's granting a decree of specific performance on evidence that defendant seller executed a listing agreement with a real estate broker, who later presented him with an earnest money agreement signed by his wife and sister (the other owner). Defendant orally agreed to sign the agreement, and the plaintiff, relying on this promise, bought an adjoining strip of land which had little value without defendant's property. Even after the adjoining property was purchased, defendant reiterated his intent to sign. Defendant subsequently refused to sign the agreement or accept the $19,000 tendered to him. This Court found there was no possession of the land in question and that there was an explanation for the purchase of the adjoining property other than the oral contract to sell.

In *Price v. Lloyd*, 31 Utah 86, 86 P. 767 (1906), this Court denied specific performance because the plaintiff's acts could reasonably be explained by a reason other than reliance on the oral contract. The plaintiff took possession of the property and expended $2,000 on improvements such as papering, painting, fencing, and construction of chicken coops. The Court found that those acts were reasonably explained as merely for the comfort and convenience of the plaintiff and held that any acts benefiting the property must be clear, definite, and referable exclusively to the contract to be sufficient to overcome the statute of frauds.

---

**3.** Utah Code Ann., 1953, § 25–5–3 states:

Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interests in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, *or by his lawful agent thereunto authorized in writing.* [Emphasis added.]

As a matter of law, the Bradshaws' acts did not constitute part performance.[4] Foch Parkinson stated, in uncontradicted testimony, that he farmed a portion of the property in question subsequent to the Funk-Bradshaw agreement. The Bradshaws' possession was therefore not exclusive or actual. Uncontradicted testimony also established that Ron Bradshaw was hired by the irrigation company to install the pipeline and a bill was sent to Funk for the work. Bradshaw did not, therefore, perform the pipeline work in reliance on the contract. Moreover, the pipeline may be more a detriment to the property than a benefit. The pipe reduced the amount of water the land received by seepage and reduced the recharge to nearby wells. The primary benefit was the elimination of angles from the farmed land. Despite the tender of the $5,000, the requirements of part performance were not met, and the oral contract is not enforceable.

Reversed. Costs to appellants.

HALL, C. J., and OAKS, HOWE and DURHAM, JJ., concur.

---

**4.** In the findings of fact the trial court stated, "In addition to the payment of the $5,000 down payment, the Bradshaws relied upon the agreement made with Roma Funk by taking and maintaining possession of part of the property included in the Parkinson farm and by undertaking substantial work thereon, primarily involving the installation of a pipeline to handle irrigation water." The court's conclusions of law stated: "There was sufficient part performance on the part of the Bradshaws to make the contract enforceable, notwithstanding the statute of frauds." The only part performance relied on by the court was installation of the pipeline and the down payment.